Esparza v. Holder, Lopez-Esparza v. Holder. Mr. Holder? Good morning. May it please the Court, Counsel. My name is Yusuf Cole. I represent the petitioner in this matter, Juan Lopez-Esparza. He's a citizen and national of Mexico. Mr. Esparza is married, has three children, born in the United States. Mr. Esparza entered the United States initially in May of 1999. In August of 2010, he was stopped for a routine traffic violation. That traffic violation led to immigration being contacted, and immigration then placed him in what's called removal proceedings. He eventually appeared in front of an immigration judge and applied for what's called cancellation of removal. Cancellation of removal, as this Court is probably well aware of, is a procedure where a person's deportation proceedings, in essence, can be terminated and, in essence, be given permanent resident status based on certain factors. There's a total of four prongs that must be met. The first prong is the crucial one in this matter. The other three were not addressed by the Court. The Court, in essence, terminated his proceedings after finding that he did not meet the first prong of that. So that's the issue that we have to address. That first prong is the 10-year presence. You have to prove that you've been in the United States for a continuous period of 10 years. The starting point of that 10-year period is August of 2010, and you work backwards. So he had to have been here at least August of 2000. The undisputed facts, and I think counsel agrees and everyone agrees, that we have established at least the 10 years. Everyone agrees it was sometime in May of 1999 when he initially arrived in the United States. Where the issue develops is in his departures. There's a provision in the law dealing with cancellation that deals with certain absences from the United States. And that provision basically provides that if you were gone any one period of time for over 90 days, then that continuous presence is terminated. There's another provision that deals with if you were gone an aggregate of any number of departures. What was the basis of the immigration judge's belief that it was more than 180 days that he was out of the country? During the course of the testimony and in the evidence that was presented, the evidence presented established certain dates that he was here or not here. I'm asking you what the judge, what was the basis on which the judge thought that he couldn't have any confidence that it wasn't more than 180 days? It was based on his confusing testimony as far as the dates of when he left the United States and returned to the United States. Specifically, there was a departure that in testimony was December or November of 2001, returning in January of 2002. Based on that confusing testimony, and I would admit it was a very confusing testimony. So the judge thought he'd spent a year in Mexico rather than three months or whatever it was? I don't know exactly what the judge thought. What did he say? Specifically, the judge said on page 14 of the record, this judge is unable to conclude that the respondent has been physically present under that because his absence cumulatively could be in excess of 180 days. So the theory would have to be that the judge would have thought he was gone at least a year, a year and a half, which the evidence does not show that, or that taking all three departures we have more than 180 days. Even if you take the outside dates of these departures from either November of 2001 to January of 2002 and the other departures, we still don't get 180 days. Well, we don't have plenary review, though. You need a legal issue to invoke our jurisdiction here. With regard to the legal issue, we believe the court and even the Board of Immigration people erred in concluding that he was gone for 180 days. The legal issue is based on the fact that is not a discretionary factor, but it's a hardcore fact, and our belief is, based on the federal rules, the CFR on this issue, once he establishes that he has been here for the requisite 10 years, then it's the government's burden to present some kind of evidence that he has not been here for the 10 years. There's no evidence. Where is that burden shifting? The burden is under the CFR, and I cite that on page 24 of my brief. It's the Code of Federal Regulations 8 CFR 1240.8 subparagraph D. But that just puts the burden on the petitioner. The petitioner has the burden of establishing his eligibility for the release sought. Right, so there's no burden shifting formula. It's just all on you. Well, it says mid-paragraph in there, if the evidence indicates that one or more of the grounds of the mandatory denial application release may apply, the alias may have the burden of proving by preponderance of evidence that such ground does not apply. Right, so you have to prove continuous physical presence, which includes ruling out the issue of these absences because that breaks the continuous presence. It does break the presence, but there was no evidence that he was gone for a 90-day period of time at one foot juncture or even aggregate. Right, and that's a factual issue. We really don't have jurisdiction to review that. What's your legal issue? The legal issue is the judge placed the burden on the petitioner in this case. It is your burden. The burden is... The statute says that and the CFR says that. The CFR says if there's evidence, indicate otherwise. There is no evidence in this case to indicate otherwise. There's not a shred of evidence that says he was gone for 90 days. There's not a shred of evidence he was gone for 180 days. The testimony on the dates may have been confusing. I admit that. Counsel, how could you say it's not a shred when he acknowledges some absences? He acknowledges some absences. So it's more than a shred, right? The question is, how many days do you think the petitioner has suggested he's been away during this 10-year period? The first absence that's of any relevance is 2001, which actually occurs in 2000, but during the change in the calendar year, that's what confused everybody. But that's the first one. Potentially that one is two months, two and a half months. There's no evidence that he ever, at one specific period of time, was out 90 days. No, no, no. Let's set aside the 90 days for a second. What's the total time that he represents that he was away during this period? I think the total amount is under 120 days total, aggregate. That's his position. With some of them being certain and some of them he doesn't recall, right? There's one where he's in absence of eight days. It could be potentially seven days. There's another one where it's a month and a half, or as he describes it, a month, a week, and a week and a half. The verbiage or the language that he uses is unclear, but if we take the outside parameters of his dates, there's nothing that brings it to 180 in aggregate. Was he gainfully employed during most of these years? For most of these years, he was gainfully employed. However, the crucial year that's at play, I would argue, is 2000, 2001. That was the year when he was basically starting out in the United States, and since, by definition, he's an undocumented immigrant. Was he self-employed when he was employed, or did he work for other people? He worked for other people. Were there any records, employment records, about pay stubs that would indicate tenure? Unfortunately, there were no pay stubs from that period of time. He did present for, as far as establishing the 1999 present state, a money that he transferred back through the equivalent of Western Union to Mexico. So that established that period of time. But the records, the physical paper records, the paper trail that would be ideal in this case, wasn't there, but that's expected in these type of situations. I mean, these are undocumented people at the beginning of their time. They just don't have the proper documentation to present their case. But there's nothing in this record to indicate the aggregate of 180 days or the 90 days at any one particular juncture in time. So we would ask that this court grant the petition review and remand this matter to at least address that issue. Okay. Thank you, Mr. McCullough. Ms. Lee? Good morning, Your Honors. My name is Sana Lee, representing the Attorney General. The petitioner has a high burden to meet here. He has to show that the record compels the conclusion. Well, I don't understand. What is the basis on which the – I can't figure out what the basis was on which the judge thought he had been absent for more than 180 days. The immigration judge just pointed out that Mr. Lopez's testimony was really confusing and inconsistent with his – What's the inconsistency? Well, his dates were all over the place. Okay, so his dates are all over the place. He doesn't remember. So what? Is there some reason to think that he was absent for more than 180 days? Well, he couldn't establish with his testimony when exactly he was here and also – Well, if he doesn't have records, he just has an imperfect memory. But isn't there – is there some reason to think? Does the immigration judge – is he just being penalized for not having a good memory, or did the judge think, no, this guy was – did he really think that when he got married he spent a year in Mexico? It's not clear from the record, Your Honor. There's also a marriage certificate that he presented, and the marriage certificate says he was married in February of 2001, but he never testified about that time in Mexico. So it's very unclear whether he had a fourth trip to Mexico or whether that first trip was a lot longer than he was saying during his testimony. Well, was he asked whether he had a fourth trip? No, Your Honor. It was pointed out to him that there is this certificate that contradicted his testimony, and he didn't remember when he was married. Well, how does the contradiction relate to the length of his departures? Well, if he was married in February of 2001 and was gone for that whole time – What do you mean, that whole time? Well, if he was in Mexico at early 2001 and then came back in 2002 – That doesn't sound right. What would he be doing? He's come to the United States, he's working in the United States. Why would he go back to Mexico for a year? He said he got married there and he spent time with his relatives and in-laws. What, a year with his relatives? What's he doing in Mexico? Is he working in Mexico or what? He didn't say, Your Honor. He said he spent time with his relatives. He wasn't in Mexico for a year. I don't believe it. Well, it was his burden to show that he did not have these breaks. All right, so he testifies, and he doesn't have any records to back it up, and he doesn't remember dates well. So the immigration judge could say, Well, I think you're lying, and you were gone more than 180 days. I don't think he said that. I think he said, You know, without records, you can't stay. Right. Anybody who comes in, you know, undocumented alien, will have to keep careful records if he ever wants to remain. Right. He didn't have the records, and just, you know, even what he was telling the immigration judge was not enough. So is there some regulation which says that you will not be able to invoke the 10-year continuous residence rule unless you have authenticated records of your presence in the United States, continuous presence in the United States? No, there's no. You got to keep all your receipts and everything, right, to show that you were here. There's no. Is that the requirement? Rule that says you need authenticated records, but they. . . Well, the burden is. . . Because it's an unconfident agency, or what? I'm sorry? Why isn't there regulation which says that to establish continuous residence, you must have documents? They could be receipts from purchases, you know, in a drugstore, or what have you. You have to be able to document this continuous presence. Wouldn't that make it much easier to adjudicate these cases? Well, Your Honor, if an applicant doesn't have these documents, he can possibly supplement the record with his testimony. But, of course, no one's told him that he's supposed to have these documents. Well, Your Honor, it was his burden to prove that he was eligible for relief, and that's what the statute says, and that's what 8 CFR. . . How could anybody ever prove continuous presence in the United States? I think some applicants do get. . . Pardon? Some applicants can provide records and statements. No, you tell me. How do you prove continuous presence in the United States? Over a 10-year period, you need 181 days. That's an average of 18 days a year. Does that mean you have to have documents for every 17 days that you're in the United States? Because if you don't have two documents that are within 18 days, you could have been gone that 18 days, right? Right. So what do you do? You could never win this case. That's not what the IG said. You've made some terrible mistake, your agency. You're letting all these people in, staying, 10-year people, and they have no proof. Well, the petitioner himself presented evidence that he was out of the country for possibly longer than is allowed. But what if he said he never left the country? If he says he never left, then that would be a different situation and a different record. Well, what does the immigration judge do when someone says, I never left? Well, it's all case by case. Does he say, prove it? Does he say, let's see documents to prove it, or just accept his say-so? I think that's up to the immigration judge. Well, what do they do, I'm asking you? If the applicant has no documents? Pardon? If the applicant has no documents? Right. I think it may be possible to show presence if you say you've never left the country, but it would certainly help. You have no idea how these cases are litigated, do you? You don't know whether if a person just comes in and says, continuous for 10 years, that's the end of the case, and he's allowed to stay, or whether an immigration judge demands evidence of some sort. Normally an immigration judge requires evidence. Well, how could you prove continuous residence? You'd need some tremendous stack of documents, wouldn't you? Well, yes, Your Honor, you do need documents, but in this case, the petitioner himself testified that he was out of the country at various points. That was a big mistake by him, wasn't it? Yes, Your Honor. He wasn't sure when he was gone, and the evidence that he did provide contradicted his testimony. So the lesson for these people is in the future, always say you never left the United States. Well, I wouldn't recommend that they lie on the stand, Your Honor. But, you know, Mr. Lopez admitted that he was gone, and he didn't account for that marriage in Mexico, and that was a key problem in his case, where his testimony contradicted that. Well, isn't that just a month or two difference, Ms. Lee, on that marriage situation? No, Your Honor, he said he left. Well, he changed his testimony a lot, but he ended up saying that he left in late 2001, returned in January 2002. Right. So it's just a matter of whether it was November or December, right? No, from February 2001 to December 2001 is, you know, not 10 months or 11 months. The marriage certificate is dated February 2001. Right. So it could have been as much as three months. You mean if he got the year wrong? Did you travel outside the United States in 2001? Yes. Pardon? Yes, Your Honor. And what dates were those? I don't recall, but, you know, this... Well, it sounds very much like this guy. Well, Your Honor, he had time to prepare his application and prepare for... All right, if you were prepared, could you go and find documents from 2001, which would show exactly when you left the country and came back? Probably, Your Honor. Ms. Lee, did these cases start with a presumption that you're here for 10 years and then... How are this particular case selected? Because he received a citation for driving without a license? I mean, how does... Do we know how he came under the purview of the system, so to speak? Right. He had a traffic violation. I think he's driving without a license. But, no, there's no presumption that he has been here for 10 years. He has to establish that, and that was his burden under immigration and nationality. Do we have any idea how the discretion is exercised for those undocumented people who are here and eligible for this relief if they're here? How we select those people for examination on whether, indeed, they're eligible? Is it triggered by a traffic stop? I'm just trying to get a sense of what initiates the process. Well, that's what happened in this case, Your Honor. He was stopped and brought to the attention of... So it's really accidental? Is that just the decision of when to initiate an examination of continuous presence? I mean, is that the department's position? That it's accidental? I'm sorry? That it was accidental that he was brought to the attention? No, no. If we've got anywhere near the number of undocumented people who are suggested popular press or whatever... 11 million. Whatever. I'm just... and I suspect a fair number are here in excess of 10 years. I just wonder how they are selected for examination. I mean, what causes, in this case, Mr. Esperanza to be selected, that's all. If you know, if you don't know what that policy is. It seems kind of random, doesn't it, to you? Well, you know, the Department of Homeland Security has limited resources, so... Well aware. They can't go out and investigate everyone, but I think they do actively pursue people who are criminals. But in other cases, they're brought to the attention by local police. And this guy's brought to our attention because he was driving without a license as opposed to... Right, Your Honor. And he admitted that he entered the country without authorization. I recognize that. That's why I referenced the many millions of undocumented workers. All right, thank you. Thank you, Your Honor. Yeah, thank you, Ms. Lee. Now, Mr. Kohler, how much time does he have? Judge, Your Honor, with regard to your question, how did this case come about and so forth, I'll tell you how it comes about. If you get pulled over in any county but Cook County, they'll contact immigration. So if you're literally driving down Harlem Avenue on the left side as opposed to the right side, that's where the border is now. So we have a county-by-county amnesty program in this country? I don't want to say it's an amnesty program, but basically if you get pulled over in Cook County, they won't contact immigration and so forth. If you get unlucky in Lake, Will, Kane, or DuPage County, then you'll go through this whole process. What triggers this is if you get placed into removal proceedings. You can't actively apply for what's called cancellation. You have to be in the deportation process. It's a defense to removal. It's a defense to removal, correct. In essence, they call it a relief move. In this particular case, the judge did find him, Mr. Lopez, as far as credible. He believed him, and he said that this court does not believe that the respondent may... Credible but inaccurate. He couldn't offer testimony or documentary proof of continuous presence. That's what the issue is here. The marriage certificate is February of 2001. Correct. And he testified that he came in in late November or sometime in December, stayed through Christmas, stayed through New Year's, got married, and then came back. And he may have misremembered the year, saying it was 2001. Maybe it was 2000. But the year was what's confusing the change in the year. He left in 2000. He testified in 2001 just because he was confused as far as to that occurring. The fact that it's listed in his application that he got married in 2001, the fact that he provided a marriage certificate in 2001, all lends credence to what he was testifying to. He just mixed up the years. And that is explained by him in a closing comment he makes when my client says, you have the proofs of all the comments you've got. But even assuming he mixed up the years, I mean, if you accept that he mixed up the years and meant 2000 instead of 2001, he's here, you know, for as long as, or he's back in Mexico for as long as 3 months during this wedding visit. It's not 3 months. He says, briefly he says November of 2001, which is November 2000. But then he corrects it to December of 2000. So we have December and January, possibly as late as February 1st. Well, we know because the certificate says February. February what? It's February 1st. But it doesn't matter. It doesn't push him over the 180 days. It does not push him over the 90 days or the 180 days. I believe, you know, he provided his case. It's only if it's like a year that he was. So your position is at the most it's 120 days. I mean, put aside the 90. Correct. 120, right? Roughly 120. And a judge, because you say he was found credible, the judge can't expand it by another 50% of the 120. Is that your point? Absolutely. That's my position. You just can't. You have to have something to say you were not here for that days. And there's nothing in this record to indicate that he's got the 90 days or the 180 days, however you want to term it. There's nothing in this record to say that was triggered. And we believe we met our burden. Okay. Thank you very much. Thank you. Mr. Kohler, we thank Ms. Lee.